1  Arthur Aaronson (State Bar No. 64988)
   **AARONSON & AARONSON**
2  16133 Ventura Blvd., Ste. 675
3  Encino, CA 91436

4  Michael Cukor, Esq.
   Vincent McGeary, Esq
5  **MCGEARY CUKOR LLC**
   54 West 40th Street
6  New York NY 10018

7
   Attorneys for Plaintiff James R. Moder
8  Crystal Chandelier Inc.

9

10              **UNITED STATES DISTRICT COURT**

11      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

12

13  JAMES R. MODER CRYSTAL           )  Case No.: 2:20-cv-03762-SVW-MAA
    CHANDELIER INC.                  )
14                    Plaintiff,      )  **OPPOSITION TO MOTION TO**
                                      )  **INTERVENE**
15        vs.                         )
                                      )
16  MAXIM LIGHTING INTERNATIONAL, INC., )
17                                    )
                                      )
18                    Defendant.      )
19                                    )
                                      )
20                                    )
                                      )
21                                    )
                                      )
22                                    )

23  _____

24

25

26

27

28

**OPPOSITION TO MOTION TO INTERVENE**

I. **Introduction**

**Preliminary Statement**

James Moder Crystal Chandelier, Inc. ("Moder") filed this declaratory judgment action because a competitor, Maxim Lighting International, Inc. ("Maxim"), repeatedly threatened to sue them for copyright and trade dress infringement if Moder sold its Translucent Collection lighting.  Moder alleged that Maxim had no right to threaten Moder with infringement allegations since it did not own any of the asserted IP.  It is now clear that Moder's allegations are true.  A purported third party, ET2 Contemporary Lighting ("ET2"), seeks to intervene and claim that it, not Maxim, owns the intellectual property. ET2 wants to rescue Maxim from a problem it knew about from the beginning of the case: it does not own the allegedly infringed IP.

The Court should deny ET2's motion to intervene. The parties have no outstanding discovery and trial starts less than 1 month after the scheduled hearing date. The existing parties are at the final stages of litigation with numerous claims ready for disposition. ET2's substitution for Maxim will change the entirety of the case and deprive Moder of any opportunity to challenge ET2's asserted ownership of copyrights and trade dress. At this stage of the litigation, Moder is entitled to dismissal of Maxim's counterclaims with prejudice and judgment declaring it does not infringe any of Maxim's rights.

ET2 offers no excuse for its late motion except that it did not know ET2 was a separate company. But ET2 and its counsel knew of ET2's and Maxim's corporate status and since well before Maxim asserted the IP and well before Maxim filed its counterclaim. Moder first advised Maxim of its reasons to believe that a third party in China developed the accused designs well before litigation commenced.  After the litigation commenced, but before Maxim filed an Answer, ET2 sought an assignment from its Chinese manufacturer, and Maxim's counsel filed a copyright application in ET2's name. Furthermore, ET2 and Maxim's counsel previously represented both

corporations in litigation. Nevertheless, Maxim purposely alleged it owned copyrights and trade dress while ET2 sat out the litigation.

### Statement of Facts and Relevant Procedural History

Moder commenced this action on April 24, 2020, after defendant Maxim threatened Moder with suit for infringing alleged copyrights in lighting products it called the "Rinkle Collection" design. The name apparently derives from design elements connoting wrinkled paper. Maxim and Moder had displayed products at the same trade show and ET2 alleges it was also present. Dkt 1 at ¶¶13-20; Dkt 36-3 at ¶6. Maxim sent Moder a cease and desist letter asserting IP rights on around January 8, 2020. Dkt 1 at ¶17.

Moder disputed that Maxim owned intellectual property in the designs. Moder, through its counsel, requested that Maxim provide some proof that it owned rights in the Rinkle Collection design. Moder also told Maxim's counsel that the asserted designs were developed in China by third parties and asked for proof of Maxim's asserted copyrights. Maxim refused to provide a copyright registration, an assignment or proof of authorship. Maxim also failed to show any basis for asserting a trade dress in the Rinkle Collection design, and advised Moder that it did not intend to seek a trade dress registration. Nevertheless, Maxim refused to withdraw its IP assertions. Dkt 1 at ¶¶ 20-35.

Moder's Complaint for declaratory judgment asserts that it did not infringe any intellectual property rights Maxim owned in the Rinkle Collection design. Dkt 1First Claim For Relief. Moder also asserted state law tortious interference and unfair competition claims, because Maxim's illegal assertion caused Moder to forego commercial activity while awaiting an adjudication of its rights. Dkt 1Second and Third Claims for Relief. In its Answer and Counterclaim, Maxim claimed ownership of the asserted IP rights and counterclaimed for both copyright and trade dress infringement. Dkt 21.

**OPPOSITION TO MOTION TO INTERVENE**

1
2
3
4
5
6

Nearly 12 months after first threatening Moder with infringement and after 8 months of litigation, Maxim now concedes that it does not own copyrights or trade dress in the Rinkle Collection design. Maxim and ET2 wish to insert ET2 in this dispute and ignore that Maxim has pressed an intellectual property dispute for nearly 1 year. In effect, ET2 seeks to substitute for Maxim with only weeks before trial. Dkt 36; 38.

7
8
9
10
11
12
13

In its motion, ET2 contends that any delay in this motion occurred because its counsel only recently realized ET2 and Maxim were separate entities. Dkt 36-2 at 4. However, ET2 and Maxim are represented by the same counsel and share the same founders. Dkt 36-3 at ¶5. The corporations have been known to its counsel since at least 2013, when its counsel represented both companies as separate entities in the litigation of *Contemporary Visions LLC v Maxim Lighting International Inc., et al,* 1:13-cv-04622-ALC-GWG (SDNY).

14
15
16
17
18
19
20
21

Also, Maxim's Initial Disclosure, served on August 18, 2020, state that ET2 has knowledge of the ownership of the trade dress and copyrights relevant to this action. Maxim Initial Disc. at 2. Maxim's counsel participated in the application for the single disclosed copyright registration in a "Rinkle Sconce" dated November 1, 2108 and indicated ET2 as the owner. In July 2020, before Maxim filed its Answer and Counterclaim alleging ownership of IP rights in the Rinkle Collection, Naco Enterprise Company Limited, a China corporation, assigned IP rights in various Rinkle Collection designs to ET2.

22
23
24
25
26
27

Maxim's response to interrogatories 4, 5 and 6 set forth its version of the history of the development and ownership of the alleged and asserted Rinkle Collection intellectual property. Maxim states, "ET2 owns all of the Intellectual Property associated with the Rinkle Collection." Maxim Rog. Ans 6. Naomi Sperling, ET2's declarant on ET2's motion to intervene, certified the answers on October 19, 2020.

28

II. ET2's Motion Should Be Denied as Untimely and Prejudicial

ET2 argues it may intervene as of right under F.R.C.P. 24(a)(2). ET2 contends that (1) its motion is timely; (2) it has a significantly protectable interest relating to the subject of the action; (3) the action's disposition may impede its ability to protect that interest; and (4) its interest is not adequately represented by Maxim. *See* Dkt. 36-2 at 3, *citing Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). In determining whether ET2 timely moved, it asks the Court to consider (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason and length of the delay. Dkt 36-2, *citing California Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc*., 309 F.3d 1113, 1119 (9th Cir. 2002). The Ninth Circuit considers timeliness as a threshold requirement. In other words, if a motion to intervene is untimely, then the Court does not need to reach the remaining elements. *See, Leauge of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (*citing, United States v. Oregon*, 913 F.2d 576,588 (9th Cir. 1990)).

**A. The Motion is Untimely**

The Court should conclude ET2's motion is untimely. ET2 moves with only weeks before trial. The pretrial conference will occur on January 11, 2021 and trial commences on January 19, 2021. Dkt 30. The first exchange of witness lists should occur on or around December 19, 2020. The current hearing date for ET2's motion, December 28, 2020, will occur after the date for disclosing witnesses for trial. The parties will be well underway with preparing for the final pre-trial conference, including narrowing the issues for trial, before ET2's motion is heard.

Furthermore, since ET2 filed its motion, Maxim has moved for dismissal of its own counterclaims and has conceded that it does not own either the asserted copyrights or the asserted trade dress. Given Maxim's motion for dismissal on its counterclaim and its concession that it owns no rights in the Rinkle Collection design, there are no factual issues to try concerning Maxim's counterclaim and Moder's claim for declaratory relief against Maxim. Moder, therefore, intends to

- 5 -

seek a judgment dismissing Maxim's counterclaims with prejudice and declaring that Moder does not infringe any of Maxim's rights. With the pre-trial phase of litigation nearing completion and with claims between Maxim and Moder ready for disposition, ET2's motion is untimely and ought to be denied.

Also, ET2 certainly knew about the case and its purported ownership interest in the intellectual property since before Maxim filed its Answer and Counterclaim. ET2 and Maxim have the same founders, and apparently share the same management. ET2's declarant, Ms. Sperling, also certified Maxim interrogatory answers. Both are represented by the same counsel here and the same counsel represented the companies as separate entities in a litigation in the Southern District of New York in 2013. ET2 attended the same tradeshow as Moder and Maxim in January 20202. Maxim's Initial Disclosures state that ET2 has relevant knowledge of the history and ownership of the purported intellectual property.

ET2's contentions that no witnesses have been deposed and no motions filed are both beside the point and only technically true. Maxim's concession on the issues of ownership did not require depositions, and the lack of depositions is no indication that the parties are in the early stages of litigation. Neither party has any outstanding discovery requests or disputes.  Further, while no motions were filed at the time of ET2's filing of the instant motion, Maxim has since moved for voluntary dismissal of its counterclaims. Thus, ET2 has failed to demonstrate that it moved timely to intervene in this case.

**B. ET2's Intervention Will Be Prejudicial**

ET2 also erroneously argues that Moder will not be prejudiced because Maxim identified ET2 as a party with relevant knowledge and because Maxim's document production included documents related to "ET2's Rinkle Collection." Also, according to ET2, since it proposes to "adopt the same facts, defenses and counterclaims," Moder will not be prejudiced.

1    ET2 ignores that its proposed motion to intervene constitutes a brand-new case. ET2 alleges

2    new and contradictory facts, namely that it, not Maxim, owns copyrights and trade dress in the

3    Rinkle Collection design. Maxim's counterclaim, on the other hand, alleged that it spent millions of

4    dollars in advertising and won numerous awards for the Rinkle collection and that as a result of

5    those actions the relevant consuming public associates the Rinkle trade dress with Maxim. Those

6    allegations, that Maxim asserted repeatedly from before the litigation commenced until today, were

7    not true. ET2's motion is intended to do away with the entirety of Maxim's misrepresentation of IP

8    rights to Moder's prejudice.

9        The factual underpinnings for ET2's putative defenses and counterclaims differ completely from

10   Maxim's. For example, ET2 must establish either authorship or ownership by assignment of the

11   copyrights, and must establish secondary meaning with ET2, rather than with Maxim, in the

12   asserted trade dress. These are fundamentally different factual assertions and legal theories from

13   Maxim's assertions of those rights. ET2's motion amounts to creating a new case.

14       Moreover, the Court should not take at face value ET2's ownership claims in any intellectual

15   property, given that Maxim and ET2 at least share founders and are represented by the same

16   counsel. Moder must be afforded the right to dispute ET2's assertions of intellectual property, the

17   supposed transfer from Naco in China, and the reasons Maxim was fronted as the IP owner until

18   this late date. ET2's late intervention would deprive Moder of the ability to contest ET2's

19   assertions, to take discovery concerning its supposed trade dress rights, and to explore the

20   relationship between ET2 and Maxim. Whether ET2 can establish copyrights and trade dress, as

21   alleged in its counterclaim, are different issues than whether Maxim can establish those rights.

22       Moder has long disputed Maxim's assertion of intellectual property rights. Maxim's wrongful

23   assertion of rights gave rise to this litigation. Moder seeks disposition on the merits that it has not

24   infringed any rights of Maxim and that Maxim is liable to Moder for unfair competition for falsely

25   asserting IP rights causing Moder to stay out of the market. If the counterclaims are dismissed with

- 7 -

prejudice, as they should be, Moder will have prevailed on a substantial portion of the merits of this case. This has further implications for Moder's affirmative claims against Maxim for unfair competition, and may have implications for whatever rights ET2 now claims. Moder would be severely prejudiced if it were required to litigate new claims from ET2 in this case.

C. The Court Should Not Excuse ET2's Delay

ET2 has no excuse for standing by while Maxim pressed false intellectual property claims. ET2 and Maxim have the same founders. ET2 and Maxim are represented by the same counsel, and have been represented by the same counsel in other litigation in at least 2013. Ms. Sperling, ET2's declarant on this motion, in October certified Maxim's interrogatory responses, which stated that ET2 owned all the intellectual property in the Rinkle Design. Maxim produced assignments purportedly assigning rights from Naco to ET2 in July 2020. Naco and ET2 apparently entered into a marketing agreement in 2018.

Maxim and ET2 should know their own rights, and should have known Maxim's lack of rights likely would result in an unfavorable disposition for Maxim. ET2 states that it attended the same trade show attended by Maxim and Moder, which gave rise to Maxim's cease and desist letters. ET2 therefore knew or should have known of the facts underlying this litigation since early 2020, yet it chose to delay moving to intervene until this last minute.

ET2 contends that counsel for Maxim and ET2 only recently discovered that ET2 and Maxim were separate legal entities. While this would not excuse delay, since ET2 and Maxim should have knowledge of their own corporate assets, this cannot be the case. In addition to current counsel representing these same entities in another legal action, current counsel prepared and served Maxim's Initial Disclosures in August of this year. Counsel also presumable prepared Maxim's interrogatory responses identifying ET2 as the owner of the asserted IP some time prior to their certification in October. The Court should therefore reject that ET2 only just now realized that it

- 8 -

was separate from Maxim and that it wished to intervene in this case. There is no basis to attribute delay to due diligence, research or discovery in determining where any IP rights reside.

D. ET2 Fails To Establish Sufficient Factors Favoring Intervention as of Right

Where, as here, a putative intervenor fails to move timely, the Court need not address the remaining factors. *See, Leauge of United Latin American Citizens*, 131 F.3d at 1302. Nevertheless, ET2 has failed to establish it has a significant protectable interest in the subject of the action, that an adjudication against Maxim will impair those interests, or that any interests are inadequately represented by Maxim.

ET2 provides no adequate proof of a protectable interest related to the Rinkle Collection. It claims ownership of a copyright and of a relevant trade dress to the Rinkle Collection, but so has Maxim. ET2 presented no evidence of its ownership interests or that it has a protectable trade dress, except for the bare assertion of its Chief Operating Officer. The Court should not accept ET2's bare ownership allegations of trade dress and copyrights in view of Maxim's contradictory assertions.

ET2 also asserts that it has a right to intervene because Moder challenges the validity of ET2's copyrights and trade dress. This is overstated, assuming ET2 owns any rights at all. In its First Claim for Relief, Moder seeks a declaration that it does not infringe a valid "Maxim copyright" or Maxim trade dress, alleging Maxim owns no copyrights or trade dress in the Rinkle Collection. ET2 has failed to show that a declaratory judgment that Maxim has no intellectual property rights in the Rinkle Collection will impact the scope of ET2's purported rights. Likewise, if ET2 is correct that it owns copyrights and trade dress in the Rinkle Collection, ET2 fails to show that a judgment against Maxim will impede ET2 from asserting its rights against third parties in the future.

ET2 further contends that Maxim will not represent ET2's interests adequately in the litigation. ET2 and Maxim are represented by the same counsel, share the same founders and apparently share management personnel. ET2 asserts that Maxim and ET2 provided all the discovery necessary to litigate this action. ET2 also asserts that it will simply adopt Maxim's legal theories and factual

- 9 -

theories and proposes a pleading that substitutes ET2 for Maxim. So while ET2 facially contends Maxim fails to assert its interests, ET2 also contends it would assert exactly the same theories and interests. The Court need not unravel these contradictory positions; rather, the Court should conclude that ET2 has failed to establish Maxim cannot adequately represent its interests.

## III. The Court Should Deny Permissive Intervention

ET2 also seeks permissive intervention pursuant. It argues that it has timely moved and that its putative defenses and counterclaims share common questions of law and fact with Maxim's. The Court should deny the motion as untimely for the same reasons ET2's motion to intervene as of right is untimely. ET2 moves at the close of pre-trial litigation at a time when the issues between Moder and Maxim are on the verge of disposition.

Further, Maxim's defenses and counterclaims rest on the factual and legal allegation that Maxim owns copyrights and trade dress in the Rinkle Collection. ET2 contradicts these assertions. If ET2 is correct, there is no reason to conclude that the case between ET2 and Moder is interchangeable with the case between Moder and Maxim. To the contrary, given Maxim now concedes its lack of rights, Moder is entitled to a judgment dismissing Maxim's counterclaims with prejudice and declaring that it infringes no rights owned by Maxim. The Court should therefore deny permissive intervention at this point in the case.

ET2 relies primarily on unreported rulings in *Winston Smith, et al., v. Chapter 4* Corp*., et al.*, No. CV-16-3910-GW-ASx, ECF No. 50 (C.D. Cal. October 3, 2017). In that case, the artist Winston Smith sued a defendant for unauthorized use of images. The defendant contended that the non-party, Decay Music, Inc., held the rights and authorized defendant's use of the images.  The court ruled Decay was an indispensable party to the matter after which Decay moved to intervene as a defendant in the case.  The Court granted intervention, although Winston had not sued Decay.

There are no analogous facts here. In *Winston Smith*, the rights holder, Decay Music, intervened to demonstrate that the accused infringer was authorized to use the images. Decay Music did not

- 10 -

intervene to press an infringement claim against Winston Smith. Here, ET2 seeks to intervene to press an infringement claim against Moder because it turns out the existing counterclaimant, Maxim, has no rights. Decay Music was an indispensable party because it authorized the accused infringer to use Winston Smith's images.

ET2 does not belong in the case between Moder and Maxim. ET2 is not indispensable or even necessary because the case seeks to adjudicate that Maxim had no right to accuse Moder of intellectual property infringement and that Maxim is civilly liable for doing so. The case between Moder and Maxim can and should be adjudicated without ET2.

## IV. **Conclusion**

For the foregoing reasons, the Court should deny ET2's motion to intervene in this matter.

.

DATED: December 7, 2020                           Respectfully submitted,


                                                  /s/ Arthur Aaronson
                                                  Arthur Aaronson (State Bar No. 64988)
                                                  **AARONSON & AARONSON**
                                                  16133 Ventura Blvd., Ste. 675
                                                  Encino, CA 91436
                                                  art@aaronsonlawcorp.com
                                                  818-783-3858


                                                  /s/ Michael Cukor
                                                  Michael Cukor, Esq.
                                                  **MCGEARY CUKOR LLC**
                                                  54 West 40th Street
                                                  New York NY 10018

                                                  *Attorneys for Plaintiff/Counter-Defendant*
                                                  *James R. Moder Crystal Chandelier Inc.*

**OPPOSITION TO MOTION TO INTERVENE**

1

2

3

4

**<u>CERTIFICATE OF SERVICE</u>**

5   I Hereby certify that on the 7th day of December, 2020, a true and correct copy of the foregoing

6   was electronically served using the Court's CM/ECF System to the following:

7

8

9   Adam P. Daniels (SBN 296466)
    adaniels@polsinelli.com

10  Michael D. Pegues (pro hac vice to be filed)
    mpegues@polsinelli.com

11  POLSINELLI LLP
    2049 Century Park East, Suite 2900

12  Los Angeles, CA 90067

13  *Attorneys for Defendant/Counter-Plaintiff*

14

15  By:  /s/ Arthur Aaronson_____
    Arthur Aaronson

16

17

18

19

20

21

22

23

24

25

26

27

28

- 12 -
**OPPOSITION TO MOTION TO INTERVENE**